UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 JUN -2  PM 12: 37

CLERK

BY  LAW
DEPUTY CLERK

MELISSA DUMONT, as Personal          )
Representative for the ESTATE OF     )
ROBERT DONALD HUTT,                  )
                                     )
     Plaintiff,                     )
                                     )
     v.                             )       Case No. 2:14-cv-209
                                     )
CORRECTIONS CORPORATION OF           )
AMERICA, CORRECT CARE                )
SOLUTIONS, LLC, ANDREW PALLITO,      )
MICHAEL E. RAPAPORT,                 )
and MITCHELL MILLER,                 )
                                     )
     Defendants.                    )

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**
(Docs. 83, 104)

     This matter came before the court for a *de novo* review of the Magistrate Judge's
January 26, 2016 Report and Recommendation ("R & R") (Doc. 104), in which he
recommended the court grant Defendant Corrections Corporation of America's ("CCA")
motion to sever claims against it pursuant to Fed. R. Civ. P. 21, and transfer them to the
District of Arizona pursuant to 28 U.S.C. § 1404(a). (Doc. 83.) Plaintiff Melissa
Dumont objects to the R & R's conclusions that severance and transfer are appropriate,
arguing that the Magistrate Judge applied incorrect standards in making those
recommendations. Defendant CCA asks that the R & R be adopted and its pending
motions be granted.

     Stacey A. Adamski, Esq. represents Plaintiff. Daniel P. Struck, Esq., Sandra A.
Strempel, Esq., and Jennifer G. Mihalich, Esq. represent CCA. Assistant Attorney
General Megan J. Shafritz represents former Vermont Department of Corrections
("DOC") Commissioner Andrew Pallito.

I.      **Factual and Procedural Background.**

A.      **Factual Background.**

In her Third Amended Complaint, Plaintiff alleges that DOC contracted with CCA in January 2007 to house inmates in facilities operated by CCA located outside the State of Vermont.  Plaintiff claims that in May 2010, Defendants Pallito and CCA amended their contract to house Vermont inmates in Florence, Arizona.  The contract allegedly required CCA to "house, guard, and provide all necessary care for certain inmates under the care and custody of VT DOC."  (Doc. 108 at 5, ¶ 12.)  The contract also allegedly required CCA to "comply with Vermont law, 28 V.S.A. § 801 *et seq.* and provide medical care in accordance with the prevailing standard of care."  *Id.* at 6, ¶ 19.

In 2010, Robert Donald Hutt,[1] a Vermont inmate, was allegedly transferred to the CCA facility in Florence, Arizona (the "Florence facility").  Beginning in February 2013, Plaintiff alleges that Mr. Hutt complained to the medical staff at the Florence facility about left hip pain, and that had medical staff ordered an x-ray of Mr. Hutt's left leg and hip at that time, they would have discovered that Mr. Hutt suffered from osteosarcoma, a type of bone cancer.  Instead, medical staff purportedly "inexplicably ignored" at least seven "Sick Call" requests for treatment, in which Mr. Hutt described his pain and the effects the pain had on his ability to walk and sleep.  *Id.* at 7-8, ¶ 24.  Medical staff apparently concluded that Mr. Hutt did not need treatment for his leg and hip pain because he could perform activities of daily living.  As a result, they only prescribed Ibuprofen for his pain.  After Mr. Hutt's alleged repeated requests for treatment, an unnamed physician at the Florence facility examined Mr. Hutt and recommended that he undergo a magnetic resonance imaging examination.  Plaintiff asserts that CCA ignored this recommendation.

On November 27, 2013, Mr. Hutt's femur broke while he was standing in his cell.  Mr. Hutt was transported to a nearby hospital for emergency surgery in which femur abnormalities were allegedly "obvious on sight."  *Id.* at 9, ¶ 31.  On December 3, 2013, Mr. Hutt returned to the Florence facility, where he was confined to a wheelchair because

---

[1] Plaintiff Melissa Dumont is the executrix of Mr. Hutt's estate.

of a wound from the surgery on his thigh. After his return to the Florence facility, Mr. Hutt allegedly routinely suffered from poor medical care, including allegedly being "forced to sleep in his wheelchair[,]" and "forced to maintain IV lines for days on end[.]" *Id.* at 10, ¶¶ 38, 41. Plaintiff further alleges that in order to have a bed and a mattress, he had to leave the medical unit and return to his cell in the general population. She asserts that CCA and its employees failed to provide Mr. Hutt with physical therapy after his surgery and, as a result, he developed deep vein thrombosis, requiring additional surgery.

On December 5, 2013, Mr. Hutt was diagnosed with osteosarcoma. CCA and its employees allegedly did not advise Mr. Hutt of the cancer diagnosis or authorize chemotherapy treatment until January 14, 2014. On January 28, 2014, Mr. Hutt began chemotherapy.

In March 2014, Mr. Hutt was transferred to Southern State Correctional Facility in Springfield, Vermont (the "Springfield facility"). There, Mr. Hutt was under the medical care of Defendant Correct Care Solutions, LLC ("CCS"), and its employees Defendants Dr. Michael Rapaport and Dr. Mitchell Miller (collectively, the "Vermont Defendants"). DOC allegedly contracted with CCS "to provide comprehensive health care to Vermont inmates in Vermont." *Id.* at 4, ¶ 7. While Mr. Hutt was incarcerated at the Springfield facility, his tolerance of and reaction to the chemotherapy was allegedly not properly monitored, causing his feet to become inflamed and infected. Thereafter, the Vermont Defendants allegedly stopped administering Mr. Hutt's pain medication "without a valid cause or justification." *Id.* at 12, ¶ 53.

On August 13, 2014, Mr. Hutt was released to the DOC's Field Supervision Unit. He lived with his sister in Windsor, Vermont until his death on October 27, 2014 from osteosarcoma.

### B.    Procedural History.

On April 9, 2015, Plaintiff filed a Second Amended Complaint naming CCA, its employees, CCS, Dr. Rapaport, Dr. Miller, and Commissioner Pallito as Defendants. On June 17, 2015, the court dismissed CCA's employees for lack of personal jurisdiction. On July 10, 2015, Plaintiff initiated a civil action in the District of Arizona, asserting

claims against CCA's employees in that forum (the "Arizona Action"). In the Arizona Action, Plaintiff alleges that CCA's employees violated Mr. Hutt's rights under the Eighth and Fourteenth Amendments by failing to properly treat him after he was diagnosed with osteosarcoma. Her Complaint includes state law claims of negligence and medical malpractice. CCA is defending and indemnifying its employees in the Arizona Action.

On November 17, 2015, the Magistrate Judge issued a Report and Recommendation, recommending Commissioner Pallito's dismissal from the case. Plaintiff objected to the Report and Recommendation and filed a motion for leave to file a Third Amended Complaint. On March 7, 2016, the Magistrate Judge granted leave to amend. On March 8, 2016, Plaintiff filed the Third Amended Complaint. On March 11, 2016, the court adopted the Magistrate Judge's Report and Recommendation, and ordered *nunc pro tunc* that leave to amend should be granted for Plaintiff's Third Amended Complaint.

In her Third Amended Complaint, Plaintiff asserts five causes of action against CCA: Count One for cruel and unusual punishment under the Eighth Amendment; Count Two for negligent medical care and treatment; Count Four for gross negligence; Count Five for medical malpractice;[2] and Count Six for negligence. Plaintiff also seeks damages pursuant to Vermont's wrongful death statute, 14 V.S.A. § 1491, compensatory and punitive damages, and attorney's fees and costs.

---

[2] A plaintiff asserting a medical malpractice claim must file a certificate of merit simultaneously with the complaint showing that he or she consulted with a qualified health care provider and that the health care provider has:

(1) described the applicable standard of care;

(2) indicated that based on reasonably available evidence, there is a reasonable likelihood that the plaintiff will be able to show that the defendant failed to meet that standard of care; and

(3) indicated that there is a reasonable likelihood that the plaintiff will be able to show that the defendant's failure to meet the standard of care caused the plaintiff's injury.

12 V.S.A. § 1042(a). On January 8, 2016, Plaintiff filed a certificate of merit.

II.    **Conclusions of Law and Analysis.**

A.    **Standard of Review.**

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405.  A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

B.    **Whether the Magistrate Judge Erred in Concluding that Severance is Appropriate.**

In her objections to the R & R, Plaintiff argues that because Mr. Hutt's treatment in Arizona and eventual death in Vermont are part of a single continuum of events encompassing common questions of law and fact, severance of her claims against CCA will not serve judicial economy.  Plaintiff also asserts that because CCA consented to jurisdiction in Vermont when it contracted with DOC, it will not be prejudiced by litigating in Vermont.  CCA responds that there is no breach of contract claim against it, and the factual commonalties between Plaintiff's remaining claims against it and her claims against the Vermont Defendants are attenuated.

Pursuant to Fed. R. Civ. P. 21, "[t]he court may . . . sever any claim against a party."  The decision to sever a claim is "committed to the sound discretion of the trial court."  *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).  A party moving for severance bears the burden of showing that "severance is required to avoid prejudice or confusion and to promote the ends of justice."  *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (internal quotation marks omitted).  District courts within the Second Circuit consider the following factors in determining whether to sever a claim under Rule 21:

(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (internal quotation marks omitted). "As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Plaintiff persuasively argues that her claims against CCA, Commissioner Pallito, and the Vermont Defendants involve common questions of law, and ultimately stem from Mr. Hutt's incarceration. However, though it is true that Plaintiff's claims arise out of Mr. Hutt's incarceration, those claims do not present common questions of fact against the two groups of defendants. *See N. Jersey Media Grp.*, 312 F.R.D. at 115 (noting that "[c]ourts have severed claims . . . where the statutory basis of the claims are the same but the facts underlying those claims are different."). Plaintiff's claims against CCA arise primarily out of events that occurred in the District of Arizona due to the alleged misconduct of CCA employees. In contrast, her claims against the Vermont Defendants arise primarily out of events that occurred in the District of Vermont due to the alleged misconduct of CCS employees. For that reason, it is unlikely that separate trials would "require *substantial* overlap of witnesses or documentary proof." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (internal quotation marks omitted).

Additionally, judicial economy would be facilitated by severance because a trial in Vermont would likely result in a "cumulative presentation of evidence" with the Arizona Action. *Gerace v. Cliffstar Corp.*, 2009 WL 5042621, at *1 (W.D.N.Y. Dec. 15, 2009). Indeed, absent severance, CCA "may be prejudiced by having to endure the delay and expense of two separate trials" in two different jurisdictions relating to the same operative facts. *Lewis v. Triborough Bridge & Tunnel Auth.*, 2000 WL 423517, at *4 n.3 (S.D.N.Y. Apr. 19, 2000). Although CCA agreed to comply with Vermont law when it

6

contracted with DOC, Mr. Hutt cannot enforce the contract's terms[3] because, as an inmate, he was only an incidental beneficiary thereto. *See McMurphy v. State*, 757 A.2d 1043, 1049 (Vt. 2000) (stating that an individual must be "a third-party beneficiary to the contract rather than an incidental beneficiary" in order to enforce its terms). CCA's contractual obligations in Vermont thus do not create a special duty to litigate Plaintiff's claims here.

Finally, if severance is granted, prejudice to CCA may be avoided because it will be able to litigate the claims against it and its employees in a single forum. In contrast, regardless of whether severance is granted, Plaintiff will be litigating in two forums. This weighs in favor of granting severance because it will alleviate at least some prejudice to at least one of the parties without imposing prejudice on the other party.

Because the majority of the factors to be considered weigh in favor of severance, *See N. Jersey Media Grp.*, 312 F.R.D. at 114 (noting that severance "requires the presence of only one of these [factors]") (internal quotation marks omitted), the Magistrate Judge correctly concluded that severance of Plaintiff's claims against CCA would "promote the ends of justice." *Agnesini*, 275 F.R.D. at 458 (internal quotation marks omitted).

### C.   Whether the Magistrate Judge Erred in Concluding that Transfer to the District of Arizona is Appropriate.

Plaintiff also challenges the Magistrate Judge's conclusion that transfer of her claims against CCA to the District of Arizona is appropriate, asserting that the Magistrate Judge failed to consider her arguments that either weigh against or do not support transfer. CCA responds that Plaintiff's decision to pursue claims in the District of Arizona negates any argument about inconvenience or deference to Plaintiff's choice of

---

[3] The contract between DOC and CCA is referred to in Plaintiff's Third Amended Complaint, and forms the basis of Plaintiff's claims against Commissioner Pallito. It is therefore "integral" to Plaintiff's claims and may be considered by the court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect[,]' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

forum because Plaintiff is effectively requiring it to litigate in two forums, which will be a waste of judicial and party resources.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). The court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013).

"[T]he party requesting transfer carries the burden of making out a strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks omitted). "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co.*, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

## 1.     Whether Plaintiff's Claims Against CCA Could Have Been Brought in the District of Arizona.

The court may only transfer an action to another district or division "where it might have been brought[.]" 28 U.S.C. § 1404(a). A transferee district is a place where suit "might have been brought" when there is "no question of the propriety of venue, service of process, or jurisdiction of the parties." *Farrell v. Wyatt*, 408 F.2d 662, 665 (2d Cir. 1969) (internal quotation marks omitted). Because Plaintiff's claims against CCA arose out of the allegedly tortious and unconstitutional conduct of its employees at the Florence facility, the District of Arizona would have jurisdiction if Plaintiff's claims against CCA were filed there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (observing that a forum may exercise personal jurisdiction over tortious conduct occurring within or "purposefully directed" at the forum.) As the situs of the alleged harm, venue is also proper in the District of Arizona. *See* 28 U.S.C. § 1391(b)(2) (stating

8

that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). The first prong of the two-part test for transfer is thus satisfied.

### 2.    Whether Transfer Promotes Convenience and Justice.

In deciding whether a transfer promotes convenience and justice, courts consider:

(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (internal quotation marks omitted).

In this case, Mr. Hutt was a resident of Vermont, and Plaintiff chose to file suit against CCA and its employees in the District of Vermont. The factual locus of Plaintiff's claims against CCA, however, arise out of acts and omissions of CCA in supervising its employees in the District of Arizona. Although CCA performed as a subcontractor for DOC, its connection to Vermont is through its contract with DOC, which Plaintiff cannot enforce. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 576 (E.D.N.Y. 2014) (observing that "the weight given to plaintiff's choice is diminished where the operative facts are not meaningfully connected [to] the chosen forum[.]").

The second factor, convenience of witnesses, arguably weighs against transfer because CCA has identified no witnesses who might be inconvenienced by travel to the District of Vermont. *See Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998) (observing that "[v]ague generalizations and failure to clearly specify the key witnesses to be called . . . are an insufficient basis upon which to grant a change of venue"). However, because witnesses to events at the Florence facility are likely to be located in Arizona and unlikely to be located in Vermont, the court cannot ignore the practical reality that witnesses' inconvenience is likely to be greater if Plaintiff's claims against CCA are litigated here. *See Neil Bros. Ltd. v. World Wide*

*Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis.").

CCA asserts that the location of relevant documents favors transfer because the majority of relevant documentation is located in Arizona. The physical location of any relevant documents, however, is of little import given the presumptive ease of scanning, copying, and overnight shipping. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (observing that "[i]n an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.") Absent an adequate explanation of the burden CCA would incur in transporting material to the District of Vermont, this factor is neutral.

CCA is more persuasive in arguing that the convenience of the parties weighs in favor of transfer because it is now defending itself in two cases based on Mr. Hutt's treatment at the Florence facility. Plaintiff asserts that it is inequitable for CCA to claim that it is entitled to a transfer to Arizona after successfully seeking dismissal of its employees based on lack of personal jurisdiction in Vermont, a defense she argues CCA could have waived. CCA's employees, however, had no obligation to consent to this court's jurisdiction. As Plaintiff has pursued her claims against them in the District of Arizona, she will suffer no prejudice if she is required to pursue her claims against their employer there as well. "While transfer is disfavored when it merely shift[s] the inconvenience from one party to the other, it may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). Because Plaintiff is already litigating in the District of Arizona, transferring her claims against CCA to that forum would relieve CCA of the inconvenience of litigating related claims in separate and distant forums without substantially adding to Plaintiff's inconvenience.

In her objections to the R & R, Plaintiff claims that the Magistrate Judge failed to consider the current state of the Arizona Action, which she claims is "well into the

10

discovery phase." (Doc. 105 at 5.)  The apparent progress of the Arizona Action, however, further supports transfer because CCA may have to "duplicate [considerable discovery-related] expenses if the [t]ransfer [m]otion were denied[.]" *Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1193 (E.D. Pa. 1982).  Additionally, because actions involving a "common question of law or fact" may be consolidated pursuant to Fed. R. Civ. P. 42(a), it is unlikely that Plaintiff would be "forced to pursue two cases in a foreign district[,]" (Doc. 105 at 5), as she claims.  This factor therefore also weighs in favor of transfer.

The locus of operative facts "is an important factor to be considered in deciding where a case should be tried." *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 310 (D. Conn. 2009).  "To determine the locus of operative facts, courts look to where the events from which the claim arises occurred." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 268 (D. Conn. 2012) (internal quotation marks omitted).  As noted in the context of severance, the events from which Plaintiff's constitutional and tort claims against CCA arose occurred in the District of Arizona.  Even if the contract between DOC and CCA can be fairly characterized as the "source" of Plaintiff's claims, the District of Arizona would remain the locus of operative facts because the contract was performed and allegedly breached there. *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (noting that "[i]n a contract case, the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.").  As a result, this factor also favors transfer.

The relative financial hardship to the parties is in equipoise because Plaintiff, as the "party of . . . lesser means[,]" is already engaged in litigation in the District of Arizona.  (Doc. 83 at 10.)  Plaintiff argues that since CCA is a publically traded corporation with "$74.4 million cash 'on-hand' and $358.7 million available under their 'revolving credit facility[,]'" it would not suffer financial hardship by litigating in the District of Vermont. (Doc. 90 at 12.)  "[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof)

11

would be unduly burdensome to his finances." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 176 (S.D.N.Y. 2009) (internal quotation marks omitted). Because neither CCA nor Plaintiff has supplied the court with documentation demonstrating that transfer to the District of Arizona would be financially burdensome, this factor is neutral and accorded little weight.

With respect to the final factor, the availability of process to compel the attendance of unwilling witnesses, nothing "has been presented to suggest that any . . . non-party witnesses would be unwilling to testify. Therefore, this factor does not enter the [c]ourt's analysis." *Soto v. Bey Transp. Co.*, 1997 WL 407247, at *4 (S.D.N.Y. July 21, 1997).

As the Second Circuit has observed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968). Because Plaintiff is litigating claims against CCA's employees in the District of Arizona, transfer of Plaintiff's related claims against CCA to that forum will serve judicial efficiency and promote the interests of justice.[4] Even if resolution of the Arizona Action is delayed because of the transfer,[5] litigating all of the claims relating to the conduct of CCA and its employees in the same forum will avoid the possibility of duplicitous litigation and inconsistent results. Therefore, convenience and the interests of justice favor transfer.

For the foregoing reasons, CCA has met its burden of showing that transfer of venue is warranted, and its motion to transfer venue to the District of Arizona is GRANTED.

---

[4] Contrary to Plaintiff's contention, if this case were transferred, the District of Arizona would apply Vermont law to her claims against CCA. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (observing that under § 1404(a), "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.").

[5] Plaintiff asserts that discovery in the Arizona Action is set to be completed by May, 2016 and claims that CCA's addition as a defendant would delay resolution of the case.

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 104) and GRANTS CCA's motion to sever claims and transfer venue (Doc. 83).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _2nd_ day of June, 2016.

Christina Reiss, Chief Judge
United States District Court